UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| CORNELIUS GOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:25-cv-00370-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ROD HATFIELD CHRYSLER DODGE | ) | **&** |
| JEEP RAM, LLC, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on a Motion to Dismiss filed by Defendant Rod Hatfield Chrysler Dodge Jeep Ram, LLC.  [R. 8.]  For the reasons that follow, the motion will be **GRANTED** in part and **DENIED** in part.

**I**

In the summer of 2025, Cornelius Golden had his sights set on purchasing a 2018 BMW 750i xDrive from Defendant Rod Hatlfield, a car dealership.  [R. 1-1 at 2.]  Mr. Golden submitted an application for financing through Prestige Financial Services, and that application was granted in July of 2025.  *Id.*  As part of Mr. Golden's credit application, he provided his driver's license and proof of income, which both identified him as African American and demonstrated that part of his income came from Veteran's Administration benefits.  *Id.*

Mr. Golden alleges that when Defendant Rod Hatfield discovered Mr. Golden's race and that his source of income came from public assistance, the dealership no longer wanted to do business with Mr. Golden.  *Id.*  Specifically, Mr. Golden alleges that during a phone call on July 8, 2025, Rod Hatfield's Finance Manager, Mike Young, made several hostile remarks towards

Mr. Golden. *Id.* Mr. Golden alleges that Young said, "that's what's wrong with 'you people'" and "'you people' never listen," before refusing to speak or deal with Mr. Golden any further. *Id.* Mr. Golden's wife, Katie Dixon, states that she heard the entire conversation between Golden and Young. *Id.* at 5-6. Following this conversation, Mr. Golden did not want to continue to "subject himself to the Defendant's whims," so he did not purchase the BMW or any other vehicle from Rod Hatfield. *Id.* at 2.

Mr. Golden then initiated this action against Rod Hatfield in Clark Circuit Court on September 15, 2025, alleging violations of the Federal Equal Credit Opportunity Act and the Kentucky Consumer Protection Act. [R. 1-1 at 3-4.] On October 8, 2025, Rod Hatfield removed the action to this Court, invoking its federal question jurisdiction under 28 U.S.C. § 1331, as well as its diversity jurisdiction under 28 U.S.C. § 1332. [R. 1.] Rod Hatfield then filed the instant Motion to Dismiss pursuant to Rule 12(b)(6), contending that Mr. Golden has failed to state any actionable claims against them. [R. 8.] Mr. Golden filed his Response, and Rod Hatfield filed its Reply.[1] [R. 13; R. 14.] As such, the matter is fully briefed and ripe for review.

## II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id.*

---

[1] Apparent technical difficulties led to the Plaintiff filing three identical Responses to the Motion to Dismiss. [R. 14; R. 17; R. 19.] The Court will treat the first Response received as the operative filing for purposes of resolving the Motion to Dismiss. [R. 14.] Further, the Defendant's Reply was filed in the Record prior to the Plaintiff's Response, but it appears the Defendant received the Plaintiff's Response by other means and thus had fair notice of its contents. [*See* R. 13; R. 14.] With no objection from the Defendant, the Court will consider the Plaintiff's Response timely.

2

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). The Court considers each of Mr. Golden's claims in turn.

**A**

Mr. Golden's first claim alleges that Rod Hatfield violated the Equal Credit Opportunity Act by discriminating against him due to his race and the source of his income, as well as by failing to provide a notice of adverse action stating the reasons for credit denial. [R. 1-1 at 3.] The Equal Credit Opportunity Act (ECOA) prohibits creditors from discriminating against any credit applicant "with respect to any aspect of a credit transaction—on the basis of race" or "because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a)(1)-(2). The ECOA also requires a creditor to notify an applicant of its action on the application within thirty days, and if "adverse action" is taken with respect to an

3

application, the creditor must provide a "statement of reasons for such action."  15 U.S.C. § 1621(d).[2]

In order to establish a *prima facie* case of credit discrimination, a plaintiff must show that he: (1) was a member of a protected class, (2) applied for credit from the defendant; (3) was qualified for the credit; and (4) despite that qualification, the defendant denied the credit application.  *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873 (6th Cir. 2002).  At the motion to dismiss stage, Mr. Golden does not have to conclusively establish a *prima facie* case of credit discrimination, but he must have pled facts that make such a case plausible.  *See Keys v. Humana*, 684 F.3d 605, 609-10 (6th Cir. 2012).

In its motion to dismiss, Rod Hatfield contends that Mr. Golden's ECOA claim must be dismissed because Rod Hatfield is not a creditor and did not take adverse action with respect to Mr. Golden's credit application.  [R. 8 at 6-8.]  Furthermore, because Mr. Golden was approved for credit through Prestige Financial Services, Rod Hatfield asserts that no adverse action was taken against him at all, by Rod Hatfield or any other entity.  *Id.* at 10-12.  In Response, Mr. Golden contends that Rod Hatfield is liable under the ECOA because it served as an "arranger" of credit, even if it was not the primary source of credit.  [R. 14 at 2.]

Under ECOA, a "creditor" is "any person who regularly extends, renews, or continues credit" or "any person to regularly arranges for the extension, renewal, or continuation of credit."  15 U.S.C. § 1691a(e).  The regulations promulgated under ECOA give further guidance, providing that "creditor" also includes those "who, in the ordinary course of business, regularly refer[] applicants or prospective applicants to creditors."  12 C.F.R. § 1002.2(l).  These "middle-

---

[2] The Plaintiff cites 15 U.S.C. § 1621d in his Complaint, which provides the applicability of other laws under ECOA.  This provision does not appear relevant to the Plaintiff's claims, so the Court presumes that the Plaintiff intended to cite 15 U.S.C. § 1691(d).

men" creditors are still subject to ECOA's prohibition on discrimination and discouragement; however, they are not always required to provide applicants with a statement of reasons following an adverse determination. *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 578 (6th Cir. 2016) (citing *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 975 (7th Cir. 2004)); *see also Salvagne v. Fairfield Ford, Inc.*, 794 F. Supp.2d 826 (S.D. Ohio 2010) ("On the continuum of creditor functions, when a dealership acts as a liaison between consumers and lenders, referring credit applications to lenders, the dealership in that capacity is a creditor under the ECOA only with respect to the antidiscrimination and anti-discouragement provisions.").

Rod Hatfield contends that it is not a creditor under ECOA because it does not make any credit determinations and serves as a mere "conduit" facilitating communication between Mr. Golden and Prestige Financial Services. [R. 8-1 at 1.] The Sixth Circuit rejected a similar argument in *Tyson*, holding that in accordance with the regulations, the car dealership defendant was definitively subject to ECOA's prohibition on discrimination and discouragement. 836 F.3d at 578 (citing 12 C.FR. § 1002.2(l)). Thus, by Rod Hatfield's own admission, it referred Mr. Golden's application to Prestige, which at the very least, means it is not exempt from the anti-discrimination and anti-discouragement provisions of ECOA. *Id.*

Regarding whether the defendant had an obligation to provide the applicant with a statement of reasons following an adverse action, the Court in *Tyson* inquired into the defendant's level of participation in the credit decision. *Id.* (quoting *Treadway*, 362 F.3d at 980-81 ("[T]here is a continuum of participation in a credit decision. . .At some point along the continuum, a party becomes a creditor for purposes of the notification requirements of the [ECOA].")). Simply put, middlemen and "conduits" may themselves become creditors by facilitating credit arrangements and participating the process, both with respect to the ECOA's

5

anti-discrimination provisions and requirement to provide a statement of reasons following an adverse action. Additionally, the fact that Rod Hatfield does not have the ability to extend credit does not mean that it cannot be considered a "creditor" under the ECOA, and it does not mean that they do not have the ability to take adverse action with respect to a credit application. *Treadway*, 362 F.3d at 975 ("Nothing in the definition of 'denial' requires that the party doing the denying have the ability to grant as well.").

The alleged facts of this case provide an example of why that is the case. Mr. Golden asserts that his credit application was approved by third-party lender Prestige Financial Services, and Prestige relayed that information to Rod Hatfield, but did not communicate with Mr. Golden. [R. 14 at 2.] Mr. Golden then alleges that Rod Hatfield refused to allow him to use that credit to finance a vehicle, for reasons prohibited under ECOA.[3] [R. 1-1 at 2.] As Mr. Golden notes in his Response, Rod Hatfield must agree to the credit financing arrangement before any buyer can purchase a vehicle. [R. 14 at 2-3.] Thus, the facts as alleged demonstrate that Rod Hatfield served a gatekeeping function which had the effect of denying Mr. Golden the opportunity to finance a vehicle. At this stage, that is enough for Mr. Golden's ECOA claim to proceed.

As a final effort, Rod Hatfield asserts that because Mr. Golden's credit application was approved by Prestige, no adverse action has been taken against him. [R. 8-1 at 10-12.] This argument is similarly unavailing. Taken to its logical extreme, Rod Hatfield's position would allow it to refuse to enter into transactions with qualified purchasers for even the most nefarious reasons and yet escape liability by claiming that no adverse action has been taken because the

---

[3] In his Complaint, Mr. Golden demonstrates some confusion as to which entity considered his credit application and whether that application was approved or denied, stating at times that Rod Hatfield considered and denied the application and at others that Prestige considered and approved the application. [R. 1-1 at 2.] Rod Hatfield asserts that these "inconsistencies" demonstrate an absence of a factual basis linking Rod Hatfield to the wrongful conduct. [R. 8-1 at 4.] However, drawing the inferences in favor of the Plaintiff, the Court believes the foregoing to be a fair representation of the Plaintiff's assertions.

credit application was approved.  But again, refusing to give the approved credit application any effect equates to denying the application, insofar as the end result is the same.  *See Treadway*, 362 F.3d at 975.  A statute designed to prohibit discrimination in credit transactions would not desire such an absurd result.  *Id.* at 978.

In sum, Mr. Golden has sufficiently pled facts that make his ECOA claim plausible.  He has alleged that he is a member of a protected class, a fact that Rod Hatfield does not dispute, and he has alleged that Rod Hatfield served as the "arranger" for his credit application.  [R. 1-1 at 2; R. 14 at 2.]  Further, the parties appear to be in agreement that Mr. Golden was in fact qualified for the credit.  [R. 1-1 at 2; R. 8-1 at 11.]  Finally, as explained above, the facts as alleged plausibly show that Rod Hatfield denied Mr. Golden's credit application by failing to give it any effect.  To that end, the Court will deny Rod Hatfield's Motion to Dismiss with respect to Mr. Golden's claim under the Equal Credit Opportunity Act.  [R. 8.]

**B**

Mr. Golden's second claim alleges that Rod Hatfield violated the Kentucky Consumer Protection Act by denying credit to Mr. Golden based on his race.  [R. 1-1 at 3.]  The Kentucky Consumer Protection Act (KCPA) was enacted "to give Kentucky consumers the broadest possible protection for allegedly illegal acts."  *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988).  It proscribes "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Ky. Rev. Stat. Ann. § 367.170(1).  The KCPA provides a private right of action for any person who "purchases or leases goods or services primarily for personal, family or household purposes" and is injured as a result of a seller's prohibited practice or act.  Ky. Rev. Stat. Ann. § 367.220(1).

In the instant motion, Rod Hatfield asserts that Mr. Golden's claims under the KCPA must be dismissed because there was no consumer-merchant relationship between Mr. Golden and Rod Hatfield.  [R. 8 at 8-10.]  Simply put, Rod Hatfield contends that the KCPA protects consumers, and Mr. Golden was not a consumer because he never purchased a vehicle from Rod Hatfield.  *See id.*  Mr. Golden responds that he is still protected by the KCPA because "the contract was about to be signed, and [he] had asked for it."  [R. 14 at 5.]  Thus, Mr. Golden asserts that the consumer-merchant relationship had been formed, though the transaction was never consummated.  *Id.*

Mr. Golden's claim under the KCPA fails on multiple fronts.  First, the KCPA only prohibits "false, misleading, and deceptive" practices, which is defined by regulation as a "[material] representation, omission, or practice that. . .is likely to mislead consumers acting reasonably under the circumstances."  *Corder v. Ford Motor Co.*, 285 F. App'x 226, 228 (6th Cir. 2008) (citing 103 F.T.C. 110, 165 (1984)).  Mr. Golden has not alleged that Rod Hatfield engaged in any conduct that could be construed as deceptive by any stretch, nor does he allege that he was misled by any of Rod Hatfield's representations.  [*See* R. 1-1.]  He simply states in his Complaint that "Defendant's denial of Plaintiff's approval to purchase [constitutes] unfair, false, misleading, or deceptive acts done in the conduct of trade or commerce[.]"  [R. 1-1 at 3.]  Of course, without more, this conclusory statement is not sufficient to state a claim, even at this stage.

Furthermore, unfortunately for Mr. Golden, the KCPA requires the plaintiff to be in privity of contract with the defendant, and thus, a prospective transaction is not sufficient to create liability under the KCPA.  *Bosch v. Bayer Healthcare Pharm., Inc.*, 13 F.Supp. 730, 750 (W.D. Ky. 2014).  Kentucky courts have held that the language of the KCPA "plainly

contemplates an action by a purchaser against his immediate seller." *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. App. 1992). Many of the cases analyzing the privity requirement inquire into whether the plaintiff must transact directly with the defendant, or if it suffices that the plaintiff dealt with a middleman who in turn dealt with the defendant. *See e.g. id.*; *see also Naiser v. Unilever U.S., Inc.*, 975 F.Supp.2d 727, 743 (W.D. Ky. 2013). Here, Mr. Golden did not complete a transaction with *anyone*, so it is unclear how he could have been harmed at all, as far as the KCPA is concerned.

In a similar vein, the KCPA protects consumers from financial harm. Mr. Golden did not purchase a vehicle—or anything else—from Rod Hatfield, so it is unclear what financial harm he could have suffered from their conduct. *Eversole v. EMC Mortg. Corp.*, No. 05-cv-124-KSF, 2005 WL 3018755, at *2 (E.D. Ky. Nov. 9, 2005) ("Since the plaintiff purchased nothing from the defendant, she is not in privity with [the defendant] and therefore [the KCPA] provides no recovery."). At bottom, having made no purchase from Rod Hatfield, Mr. Golden has not suffered an injury under the KCPA, and with no injury to redress, Mr. Golden does not have standing to bring a KCPA claim against Rod Hatfield.

Although Kentucky courts broadly construe the protections of the Kentucky Consumer Protection Act, Mr. Golden has plainly not alleged any facts that could plausibly give rise to liability under the KCPA. As such, the Court will grant Rod Hatfield's motion to dismiss with respect to Mr. Golden's claims under the Kentucky Consumer Protection Act. [R. 8.]

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendant's Motion to Dismiss **[R. 8]** is **GRANTED in part and DENIED in part;**

9

2. The Plaintiff's Claim under the Kentucky Consumer Protection Act is **DISMISSED with prejudice**; and

3. The Plaintiff's Claim under the Equal Credit Opportunity Act will proceed in the normal course.

This the 19th day of May, 2026.

Gregory F. Van Tatenhove
United States District Judge

10